**ANDREW D. COIT**, OSB #972378
**CHELSEA B. PAYMENT**, OSB #141125
COIT & PAYMENT, P.C.
800 Willamette St., Ste. 700
Eugene, OR 97401
Ph: 541-685-1288 • Fax: 541-653-8224
andrew@lawfirmeugene.com
chelsea@lawfirmeugene.com
Attorneys for Defendant

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br>vs.<br><br>BRADLEY CARTER,<br><br>  Defendant. | Case No.: 3:17-CR-00239-HZ<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

Defendant, by and through his attorneys Andrew Coit, and Coit & Payment P.C., submits this sentencing memorandum. Defendant respectfully requests the Court sentence defendant to probation and order defendant pay $19,600 in restitution and establish a payment plan for the restitution.

In the alternative, defendant respectfully requests the Court sentence defendant to 8 months of home detention.

The sentencing hearing is currently set for October 16, 2017, at 11:00 a.m. Defendant is ready to proceed with sentencing at the currently scheduled date and time.

## CASE STATUS

The charged crime is one count of intentionally accessing a protected computer in violation of 18 U.S.C. § 1030(a)(2). The crime occurred in late March of 2016.

When the search warrant was executed on defendant's residence on November 8, 2016, defendant cooperated with FBI agents. Defendant admitted his culpability in the instant offense.

Prior to being charged, defendant met with federal agents and Assistant United States Attorney Scott Bradford at which time a plea offer was discussed. Defendant accepted the offer shortly thereafter. Defendant pled guilty to the instant offense at his initial appearance before this Court.

When defendant's property was being returned to him, an FBI agent inadvertently gave to defendant a 3 TB hard drive that was given to the FBI by the victim during the investigation. Defendant promptly made arrangements to return the property to the FBI and assisted in that process.

As part of the plea offer, defendant agreed to pay restitution.

## PRESENTENCE REPORT

Defendant believes the presentence report does an excellent job summarizing the facts pertinent to this case.

The presentence report correctly reflects the 1-level downward variance agreed to by both parties. The presentence report accurately calculates defendant's total offense level (11), criminal history category (I), and advisory guideline range (8-14 months).

The presentence report's recommended term of probation is 5 years. The presentence report's recommended term of incarceration is 8 months home detention. The presentence report's recommended amount of restitution is $19,600. The presentence report further recommends a special assessment of $100.

## RESTITUION

Pursuant to plea negotiations, defendant agrees to pay restitution in the amount of

$19,600.

## ADVISORY NATURE OF THE GUIDELINES

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in Blakely v. Washington, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 120 S.Ct. 2348 (2000) applies to the Federal Sentencing Guidelines. United States v. Booker, 125 S. Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines in the cases before the Court. Id. at 751. Accordingly, reaffirming its holding in Apprendi, the Court concluded that

> "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."

Id. at 756.

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1) or which rely upon the Guidelines's mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment holding. Booker, 125 S. Ct. at 756. Accordingly, the Court severed and excised those provisions, mak[ing] the Guidelines effectively advisory. Id. at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker, "requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)." Booker, 125 S. Ct. at 757. Thus, under Booker, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a). Nonetheless, the guidelines are still to be used by sentencing courts as a

starting point and framework for which federal sentences should be imposed. See e.g. Peugh v. United States, 133 S. Ct. 2072, 2080 (2013); Molina-Martinez v. United States, 136 S. Ct. 1338, 1342 (2016).

The primary directive in 18 U.S.C. § 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in subsection 2. Section 3553(a)(2) states that such purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, 18 U.S.C. § 3553(a) further directs sentencing courts to consider the following factors:

1) the nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1));

2) the kinds of sentences available (§ 3553(a)(3));

3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (§ 3553(a)(6)); and

4) the need to provide restitution to any victims of the offense (§ 3553(a)(7)).

Other statutory sections also give this Court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the

judge is required to recognize that imprisonment is *not* an appropriate means of promoting correction and rehabilitation. See 18 U.S.C. § 3582(a). In sum, in every case, a sentencing court must now consider <u>all</u> of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing.

### SENTENCING RECOMMENDATION

Defendant respectfully requests the Court sentence defendant to probation and order defendant pay $19,600 in restitution and establish a payment plan for the restitution.

With respect to the 18 U.S.C. § 3553(a)(2) sentencing purposes that the Court should consider at sentencing, defendant submits the following. A felony conviction with a five year probationary sentence and a large award of restitution reflects the seriousness of the offense, would promote just respect for the law, and would provide just punishment. Although defendant's crime was serious and intrusive to the victim and to the subjects of the prank call, the 8 month incarceration sentence requested by the government would not further these objectives.

Defendant's requested sentence would provide adequate deterrence for future criminal conduct and would protect the public from future crimes by defendant. Defendant understands the seriousness of the offense. Defendant accepted responsibility quickly for the crime he committed. Defendant promptly returned the victim's property when it was inadvertently given to him by law enforcement. Defendant understands the seriousness of the present offense and does not intend to commit future criminal offenses.

Any treatment, educational training or vocational training deemed appropriate by the Court would most easily be obtained by defendant if he were not in custody.

With respect to the other sentencing considerations set forth in 18 U.S.C. § 3553(a) listed above, defendant submits the following. Defendant's character and history warrant the requested

sentence. As shown in the presentence report, defendant's prior convictions are for minor offenses and occurred in his early twenties. Defendant is submitting character references attached to this memorandum as Exhibit 1. Defendant is of good character. He is hard-working and is active in the lives of his children and his significant other's children as well.

Defendant is not contesting the requested restitution amount. With respect to the rest of the sentence, the kind of sentences available include: formal incarceration, home detention and a sentence which does not include any incarceration. Defendant requests probation with no incarceration. Defendant submits this is sufficient to accomplish the 18 U.S.C. § 3553 objectives discussed above. If the Court deems some additional punishment appropriate, defendant respectfully requests the Court follow the recommendation of the presentence report and impose 8 months of home detention. Such a sentence would not create an unwarranted disparity to other cases. This case is unusual and defendant accepted responsibility quickly which caused a prompt resolution.

Finally, a sentence of either probation with no incarceration or a sentence of 8 months of home detention would allow defendant to continue working. This would facilitate a more rapid payment of restitution to the victim in this matter.

///

///

///

///

///

///

///

## CONCLUSION

For the above stated-reasons, defendant respectfully requests the Court sentence him to 5 years of probation with no formal incarceration and no home detention. In the alternative, defendant requests the Court sentence him to 8 months of home detention. Defendant agrees with the amount of restitution requested by the government and requests he be allowed to repay it on a payment plan.

RESPECTFULLY SUBMITTED THIS 11TH DAY OF OCTOBER, 2017.

Andrew Coit, OSB #972378
Attorney for Bradley Carter, Defendant



Tatum Neal <tatum@lawfirmeugene.com>

### Letter (Brad Carter)
1 message

**Emily Carter** <emilyanne1996@yahoo.com>  Mon, Aug 14, 2017 at 6:32 PM
Reply-To: Emily Carter <emilyanne1996@yahoo.com>
To: "andrew@lawfirmeugene.com" <andrew@lawfirmeugene.com>, "tatum@lawfirmeugene.com" <tatum@lawfirmeugene.com>, Brad Carter <brad@notla.com>

Honorable Judge Marco Hernandez,

My name is Emily Carter, and I'm currently an unemployed college student living in Portland, Oregon. My father is Bradley Carter, and without his help it would be considerably more difficult to live out here and pursue my education. Financially and emotionally, no one supports me more than my dad.

After I graduated high school, my dad paid out-of-pocket for me to attend my first year of college when I otherwise wouldn't have been able to go. He's encouraged me to get jobs when I had an aversion to responsibility. He's helped me become an adult and he's taught me so many life skills. When I was finally diagnosed with depression and anxiety this last year, he's been there to help pay for my medical bills or drive me to any appointments I can't get to on my own. I wouldn't be able to do any of this without him.

Right now, my father also provides housing for my little brother, Payton Carter. If not for this, Payton would have to live with our mentally unstable, emotionally abusive mother. She recently lost her house and is living with my grandparents; it's crowded and not an entirely healthy household, and I much prefer knowing my brother is safe with my dad.

Everything would be much harder without his support and love in our lives.

Thank you,
Emily Carter



EXHIBIT 1 (1/5)

Vanessa Grant
14010 Captain's Row, Apt 150
Marina del Rey, CA 90292


August 26, 2017

Honorable Marco Hernandez
Mark O. Hatfield United States Courthouse
Room 1427
1000 Southwest Third Avenue
Portland, Oregon 97204-2944


Your Honor,

My name is Vanessa Grant and I am writing to you on behalf of Bradley Carter who I have known for 22 years and considered one of my best friends for the last 12.

I am 37 years old, a wife to a wonderful husband and a mother to a beautiful 4-year old son with another baby on the way. I work full time as a VP of Business Operations for Triton Digital, a mid-size ad technology company that I've been at for 16 years. I moved to Los Angeles from New York City late in 2009, shortly after earning my MBA from New York University in its part-time Stern Langone program.

I first met Brad online through Internet Relay Chat ("IRC") in 1995 when I was 15 years old. I was bullied at school and my parents had just divorced. I was very depressed and I looked to find new friends on IRC to offer support. A friend eventually introduced me to Brad's entertaining newsletter. I found the content to be very funny and I made a whole network of friends who were fans and contributors of the newsletter. When I eventually started speaking to Brad online, I was so impressed by how nice he really was and how welcoming he was to me. Everyone in the group looked up to Brad and he really set the tone. Everyone was included. It was the first time in my life that I felt that I had found my people.

We remained acquaintances on IRC for a couple of years. In 1997, when I was 17, I somehow managed to convince my NYPD Lieutenant father to go on a road trip with me to visit my IRC friends. My first stop was to visit Brad in Celina, OH. I spent an afternoon with him and his family. I remember my father being so impressed by how normal and nice my "Internet friends" were. Brad didn't have to meet me, a fan who he only kind of knew, but I was so thrilled that he not only took the time to hang out with me, but was such a gracious host. Unfortunately, we only chatted online very occasionally for a number of years after this visit and we lost touch for a bit.

I reconnected with Brad for good in 2005 at a mutual friend's wedding in Texas. I had brought my best friend to the wedding who ended up embarrassing me and we had a huge fall out. Brad ended up being a huge source of comfort for me and we hung out that entire weekend. Once I got back to New York, Brad and I began speaking to each other online and on the phone every night. Within a few weeks, I went to visit him in Illinois. We began a romantic relationship. I remember on one of my first visits to Illinois, Brad scheduled an in-person meeting with a 12 year old fan named Nate. Nate was incredibly depressed, bordering on suicidal. Brad and I took him to a hot air balloon fest and bought him dinner afterward. Again, Brad had never met this kid before, but he took the time because he sensed that he could help. We listened and offered advice and I could tell it really meant the world to Nate that his idol took the time to meet him. It was heartwarming.

Another quality that drew me to Brad at the time was his devotion to his children. His ex-wife had recently moved Brad's two young children across the country to Albany, OR. I watched as Brad sold his house and left everything in his hometown behind to follow his children there. There's nothing that was more important to him than having an active role in their lives. He was so careful when he finally introduced them to me and I was touched by how wonderful their relationship was.



Our romantic relationship ended in 2007, but we've stayed friends all of these years and have visited each other a few times since. Despite the change in our relationship, Brad has still always been available for a laugh, a shoulder to lean on, or even parenting advice when I had a child of my own.

I think that is the most important thing I'd like to get across. Brad is always kind and welcoming in person to friends, family and fans. In 22 years, we have never had a big argument because Brad is so even tempered and good natured. In 2008, I went to a convention in New York City that Brad didn't even attend, but saw probably close to a thousand people crowd into a room to celebrate the anniversary of Brad's early newsletters and all of the entertaining content that he's put out since. I couldn't believe how many people (with admittedly strange senses of humor!) came out to celebrate his work. In 2011, Brad, my husband Andrew, and I road tripped to a convention in Las Vegas together to meet some of Brad's fans and it was so awesome to watch him interact with everyone and be as inclusive as he was when I first started chatting with him all those years ago.

I understand that Brad has plead guilty to fraud and related activity in connection with computers and how serious it is. He is a kind hearted, good person despite his mistakes, and so I'd like to ask the Court to give Brad as lenient a sentence as possible. He has continued to be a rock for me and others despite the recent lows he has experienced. His life is on the right track now and I want nothing more than to see him continue on that track. His friends, family and fans all support him.

Sincerely,

**Vanessa Grant**

Digitally signed by Vanessa Grant
DN: cn=Vanessa Grant, o=Triton Digital, ou=Business Operations, email=vanessa.grant@tritondigital.com, c=US
Date: 2017.08.26 00:35:02 -07'00'

EXHIBIT 1 (3/5)



Tatum Neal <tatum@lawfirmeugene.com>

## RE: Brad Carter
1 message

**Ms. L. West** <mw_liana@yahoo.com>  
To: tatum@lawfirmeugene.com, andrew@lawfirmeugene.com

Tue, Jul 11, 2017 at 10:48 AM

Begin forwarded message:

**From:** "Ms. L. West " <mw_liana@yahoo.com>  
**Date:** July 10, 2017 at 11:44:48 PM PDT  
**To:** bradthecarter@gmail.com  
**Subject: Letter**

. July 10, 2017

Honorable Judge Marco Hernandez,

My name is Liana. Brad Carter is my significant other.

Brad is an essential active partner in our home. Not only as a support, but as a help with the care of my children, and the maintaining of the home. Of the four children I have at home, three have disabilities. One is greatly impacted in his daily life with autism, one child who is a heart patient who has epilepsy, and another who is struggling with his transition into adulthood with developmental disabilites.

When my son had his open heart in Decemeber of 2015, Brad was a support not only the Children's hospital, but at home with the other children during a very stressful time. He was a very active help with the post-op care of my son, and without his help I wouldn't have been able to care for the needs of the home and other children during that time. Recently my son was transferred via ambulance to Portland in the middle of the night due to seizure activity. I was able to rely on Brad to help in a situation I otherwise would have had very limited resources to rely on, so that I could accompany my son during the transfer, and stay with him at the hospital. Since siblings are not allowed to stay overnight at the hospital after visiting hours, regardless of familial status, I would have had to make the lenghty drive back to our home daily, and not be able to support my child during his latest hopsitalization. However, because of Brad's help and experience with the kids, I was able to be with my son during his stay. This not only helped, it provided me a sense of comfort and relief knowing he was here and able to care for my other children; something that makes all the difference when caring for a child with health challenges.

Brad has attended doctor appointments with the specialists who care for my children, and was trained by the specialist to adminster emergency life saving medications for my son who experiences seizures, as well he understands the

EXHIBIT 1 (4/5)

needs of my son with autsim and his care. There are no other adults in our life who understand the medical and special care my children need to the extent Brad does.  As well, because he has been present during previous hopsital stays, he understands the various medical challenges my child deals with. I trust him exclusively before others in our life, to make the best choices in the event something should happen that requires immediate medical attention. Brad is a steady, consistent and reliable support in our lives. Without his help and partnership in our home, I would not be able to meet all the needs we have as a family as effeciently and thoughfully as I can. His role in our lives, and daily partnership in mine is vital to the home, and makes a significant difference.

Thank you for your time and consideration,

Liana West



EXHIBIT 1 (5/5)